# STATE OF VERMONT

# ENVIRONMENTAL COURT

In re: Appeal of Robert and }
Joyce Gay, Anne Gay Curtin, }
and Gloria Gay Quinn } Docket No. 207-9-02 Vtec
}
}

## Decision and Order

Appellants Robert and Joyce Gay, Anne Gay Curtin and Gloria Gay Quinn appealed from a decision of the Planning and Development Commission of the Town of Westminster approving a site plan for the former Gageville school building at 213 Gage Street in the North Westminster Village zoning district. Appellants appeared and represented themselves (Anne Gay Curtin was in Arizona and unable to attend the trial); Appellee-Applicant Rockingham Area Community Land Trust is represented by J. Christopher Callahan, Esq.; the Town of Westminster did not enter an appearance in this appeal. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, at the close of which the parties made their arguments on the record. Upon consideration of the evidence and the parties' arguments, the Court finds and concludes as follows.

Southeastern Vermont Community Action, Inc., (SEVCA) owns the parcel of land at 213 Gage Street containing the building formerly housing the Gageville school, and most recently in use for professional offices and a day care facility. Appellee-Applicant Rockingham Area Community Land Trust, as agent for SEVCA, applied to the Zoning Board of Adjustment (ZBA) for a change in use of the property from the professional office and day care use to a four-unit multi-family dwelling, and to the Planning and Development Commission for site plan approval of changes to the parking area, front access onto Gage Street, and landscaping for the property. No exterior changes are proposed for the building itself or for the existing exterior lighting.

The ZBA granted the change in use permit on August 1, 2002. Appellants did not appeal this decision. The Planning and Development Commission approved the site plan on August 13, 2002. Appellants appealed the site plan decision to this Court in the present appeal.

Appellee-Applicant proposes to remodel the building interior[1] to provide two two-bedroom apartments and two one-bedroom apartments. The parking lot will have eight spaces, two of which meet the requirements for handicapped accessibility. An existing fence now placed within the area proposed as the parking area is proposed to be removed and to be reinstalled or replaced along the back (western edge) of the parking area. There is room to plow snow from the parking area to the rear or south of the two handicapped spaces, but the proposed fence to the west of the parking area would block the plowing of snow to the west of the proposed parking area if the two handicapped spaces should be occupied during a snow event.

The access from Gage Street onto the property will be defined as a 24-foot-wide driveway into the parking area. The pavement will be removed from remaining undefined paved access from Gage Street onto the property, and that area will be graded, loamed and seeded. A bituminous concrete curb will be installed as shown on the site plan. A line of thirteen arborvitae trees will be planted, five feet on center, near the northerly property line between the parking area and the neighboring property, using plants of a four to five foot height at time of planting. No fence or plantings are proposed to define the northerly property boundary westerly of the arborvitae trees.

While the right-of-way for Gage Street is about 50 feet wide, its paved width is closer to twenty feet. Traffic access from the property either must turn left onto Gage Street and proceed through a complex and poorly designed offset intersection[2] of Gage Street, Church Street and Route 121, to travel on Route 121, or must turn right onto Gage Street and connect with Route 121 via Forrest Street, or connect with Route 5 via Covered Bridge Road. None of these routes is adequate for a great amount of additional traffic. However, the amount of traffic predicted to be generated by the four-unit apartment building is two round trips in the afternoon peak hour, less than that generated by the daycare facility and office uses that were in the building prior to this application. In any event, the site plan approval process only examines the adequacy of the driveway onto Gage Street from the property, not the effect of traffic generated by the proposed use on traffic on roads and highways in the vicinity. That question is properly the subject of a conditional use application, which is not before the Court in this appeal.

We examine the four site plan approval criteria in turn. § 151.1(b). The proposed site plan provides for the maximum safety of traffic between the site and the streets. The driveway is proposed to be 24 feet in width, which is sufficient to allow two vehicles to pass each other, yet is sufficiently well-defined to prevent random movements of vehicles onto and off the property. This design represents a significant improvement in safety for both vehicles and pedestrians compared to the completely paved and undefined front yard and parking areas of the property in its present configuration.

The proposed site plan provides for adequate traffic circulation within the project, and adequate parking and loading facilities. The eight parking spaces are those required for four units of housing, and the spaces and aisles and driveway are sufficiently wide to allow adequate maneuvering on site. The only aspect of the site plan that is inadequate with respect to this criterion is the proposed placement of the fence along the westerly edge of the parking area, which will prevent snow from being plowed off the parking lot towards the west if the handicapped spaces are occupied during a snow event. Accordingly, to meet this criterion, the fence at the westerly edge of the parking area shall be constructed with a gap in the center of the parking aisle of sufficient width to allow for the plowing of snow onto the area to the west of that fence.

The landscaping and screening proposed in the site plan provides for the maximum compatibility with and protection of adjoining property. No changes in the existing setbacks are proposed. The row of arborvitae trees will define the property boundary and screen the parking lot from the immediate neighbor to the north. The houses on Church Street are distant from the building and parking lot on this property, although the back yards may adjoin, and do not appear to require additional screening. However, after the property is in use, if the landscaping and screening does

not in fact provide the ' maximum' protection of adjacent property, any adjoining property owner is free to petition the Planning and Development Commission for an amendment of this site plan to provide additional protection such as fencing or screening along the entire northerly property boundary.

The proposed site plan provides for the protection of the utilization of renewable energy resources. The site plan does not make any changes in renewable energy resources. The prior renovation of the building insulated the building and installed updated and more energy-efficient lighting.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's site plan is hereby APPROVED. This decision and order concludes this appeal. By or before January 13, 2003, Appellee-Applicant shall file with the Town the original of a revised copy of the site plan (Sheet 1 of Exhibit A) reflecting the location of a gap for snow plowing in the fence at the westerly side of the parking area, and specifying the areas onto which snow is to be plowed from the parking lot, with copies for the Court's file and for the parties.

Dated at Barre, Vermont, this 26th day of December, 2002.

_____
Merideth Wright
Environmental Judge

### Footnotes

[1.]     Any issues to do with the historic qualities of the building or whether its use may be changed without any exterior alterations are not before the Court in this case. See Article V of the Westminster Zoning Ordinance, which applies only within the Historic Preservation Overlay District and only to 'external appearances.'

[2.]     This intersection could benefit from a roundabout or at least a different configuration of stop signs and yield signs. However, the design of this intersection and the traffic generated by other users of the intersection, such as the chiropractor's office, is not before the Court in this appeal, and in any event would not be affected by this project.